IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| EVETTE ROBINSON,<br>    Plaintiff,<br><br>v.<br><br>JANE MOSKUS, MICHAEL WILLIAMS, and BRAD ROGERS,<br>    Defendants. | Case No. 1:19-cv-02156-MMM-JEH |

**Order**

Before the Court is a Motion to Compel (D. 43)[1] filed by Plaintiff, Evette Robinson. For the reasons stated, *infra*, the motion is denied.

**I**

**A**

Robinson filed a multi-count Complaint against Defendants, Jane Moskus, Michael Williams, and Brad Rogers, stemming from allegations that while Robinson was an inmate with the Illinois Department of Corrections (IDOC) at the Decatur Correctional Center, IDOC employee Williams, the Food Service Manager, sexually harassed and assaulted her. Robinson alleges, among other things, that Moskus, the Warden at the time, failed to protect her, as did Rogers, who was the IDOC Internal Affairs Investigator assigned to investigate Robinson's claim, all in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. (D. 1).

Robinson made the following requests for production to Moskus and Rogers, to which these Defendants made various objections:

---

[1] Citations to the docket in this case are abbreviated as "(D. __ at ECF pp. __)."

1

3. All documents related to sexual misconduct, harassment or allegations of sexual misconduct or harassment by Decatur Correctional Center employees involving detainees of the Decatur Correctional Center within the last ten (10) years.

6. All documents regarding investigations and inquiries preformed concerning allegation of sexual, sexual harassment or inmate abuse by Decatur Correctional Center employees with regard to the Decatur Correctional Center and its detainees. This request seeks all such documents generated in the last ten (10) years by Decatur Correctional Center, its agencies or agents, as well as third parties, including State agencies and departments.

12. Any and all documents related to the resolution of any litigation related to allegations of sexual misconduct on behalf of Decatur Correctional Center employees.

14. All documents related to communications with persons not employed by Decatur Correctional Center regarding allegations of sexual misconduct or inmate abuse on behalf of Decatur Correctional Center employees for the past 5 years.

18. All documents made by Decatur Correctional Center employees, officers, and/or officials to any third-party concerning plaintiff and/or misconduct or allegations of misconduct on behalf of Decatur Correctional Center employees in the last ten (10) years.

(D. 43-1 at ECF pp. 1, 4, 10-11, 16). After attempting to resolve the objections through conferral and failing to do so, this Court granted Robinson leave to file a written motion to compel.

**B**

As an initial matter, Robinson notes that the parties are at issue over whether these Defendants have possession, custody, or control over documents within the physical possession of the IDOC. Specifically, while the Defendants do not personally have most of the documents Robinson seeks, the IDOC does. Accordingly, the Defendants argue that Robinson should seek these documents

2

via a subpoena to the IDOC, which actually has the documents, instead of seeking them from the Defendants who do not. Indeed, to produce these documents, the Defendants would first need to request them from the IDOC and then produce them to Robinson.

Robinson argues that the documents she seeks are in the "possession, custody, or control" of the Defendants as defined by Federal Rule of Civil Procedure 34(a)(1) (requiring a responding party to produce items within its "possession, custody, or control)." According to Robinson, the relationship between the Defendants and the IDOC is such that they can obtain all documents in the possession of the IDOC. (D. 43 at ECF p. 10). This is so because the Defendants are being provided representation by the State of Illinois pursuant to statute, *i.e.*, 5 ILCS 350/2(a), the Attorney general by statute is conducting the defense of these Defendants, and the State will ultimately indemnify these Defendants if they lose. *Id*. Given that the interests of the IDOC and these Defendants are "completely aligned," the documents in possession of the IDOC are within the "possession, custody, or control" of the Defendants. (D. 43 at ECF p. 11).

The Defendants also argue that Robinson's requests seek irrelevant information; are overly broad and vague in definition, time, and scope; and seek sensitive documents regarding other inmates. (D. 46). Robinson, of course, disagrees.

## II

### A

Federal Rule of Civil Procedure 34(a)(1) provides that "a party may serve on any other party a request within the scope of Rule 26(b)" to produce documents within the "responding party's possession, custody, or control." Here, the documents Robinson seeks are not in the physical possession of the Defendants,

3

but instead in the possession of a non-party, *i.e.*, the IDOC. Accordingly, the question before the Court is whether the documents at issue are in the Defendants' possession, custody or control in a legal sense.

Although a document can be in the possession, custody, or control of a party where it has the power to order a non-party to surrender the document to them, the mere ability to ask a third-party for a document and receive it is not enough. *See Chaveriat v. Williams Pipe Line Co.*, 11 F. 3d 1420, 1426-27 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means just the opposite."); *see also Boyd Group, Inc. v. D'Orazio*, No. 14-cv-7751, 2015 WL 5321262, at *4 (N.D. Ill. Sept. 11, 2015) (noting that "the issue of control turns on the *legal right* to obtain documents, not the practical ability to do so) (emphasis in original). Rather, a party to whom a request for production is made must have the "legal right to obtain the documents sought to be produced. . . even in the absence of actual possession." *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992), *citing Bowman v. Consol. Rail Corp.*, 110 F.R.D. 525, 526 (N.D. Ind. 1986); *In re Folding Carton Anti–Trust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977).

This requirement that a party have the "legal right to obtain the documents sought" in order to be deemed to have "possession, custody, or control of them" for purposes of Rule 34(a)(1) is well established in this Circuit. Specifically, the test was first articulated by a court in this Circuit in 1977 in *Folding Carton*, 76 F.R.D. at 423, stating that "[t]he test is whether the party has a legal right to control or obtain" the documents requested. *Folding Carton* in turn cites to the 1969 edition of *Moore's Federal Practice* as authority for the test. *Folding Carton*, 76 F.RD. at 423, *citing* 4 MOORE'S FEDERAL PRACTICE § 34.09, at 2493–2494 (2d ed. 1969). The test was next articulated in this Circuit in 1992 when the court in *Bowman v.*

*Consolidated Rail Corp.,* 110 F.R.D. 525, 526 (N.D. Ind. 1986), reiterated this "legal right" test, citing to *Folding Carton.*

However, the clarity of this test began to blur in 1992 when the court in *Burton Mechanical Contractors, Inc., v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992), cited *Bowman* and restated the "legal right" test, but added this: "Some courts have also inferred the requisite control over documents where the existence of a close relationship between the party receiving the request and the non-party has been established." *Burton*, 148 F.R.D. at 236, *citing Kravitz v. Jewelry Basics, Inc.,* No. S85-255, 1990 WL 44899 (E.D. Pa. Apr. 12, 1990); *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127 (D. Del. 1986); *and In re Uranium Antitrust Litig.,* 480 F. Supp. 1138, 1153 (N.D. Ill. 1979). What the court in *Bowman* did not explain is that the cases to which it cited deal with a very specific question, namely, under what circumstances does a party "control" documents within the context of corporate affiliations and ownership. For example, in *Kravitz*, the court considered whether the defendant, the sole owner, chief executive officer, and director of two corporations, had control of the requested documents. 1990 WL 44899, at *5. In *Afros*, the court considered whether the requested documents from a parent corporation were in the possession of its subsidiary. 113 F.R.D. at 129. Finally, in *Uranium Antitrust Litigation,* the court considered whether a domestic parent corporation controlled documents possessed by its foreign subsidiaries. 480 F. Supp. at 1144. *Burton*, however, had nothing to do with these questions of corporate control of documents, but rather addressed whether the defendant had a legal right to obtain requested documents from his employer. 148 F.R.D. at 236. The court concluded that the plaintiff had failed to present any evidence to show that the defendant had the requisite control of the documents sought and, consequently, denied the plaintiff's motion to compel. *Id.*

Things became murkier still with the court's decision in *Engel v. Town of Roseland*, No. 06-CV-430, 2007 WL 2020171 (N.D. Ind. July 6, 2007). Like, *Bowman* and *Burton*, the court in *Engel* states the relevant test as "whether the party has a legal right to control or obtain the documents." *Id.* at *2, *citing Folding Carton,* 76 F.R.D. at 423; 8A, WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994). The court then adds this: "In fact, some courts have even found a party is in control of documents if they have the practical ability to obtain them." *Id.* (citing *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)). However, the court in *Engel* does not in any way rely on a party's "practical ability" to obtain documents, but instead found that the requested party had the "legal right" to obtain the requested documents from the IRS and financial institutions such that the party had the requisite possession, custody, or control of the documents. *Id.* at *3.

The *Prokosch* court, to which *Engel* cites, notes that "control is defined as 'the legal right, authority, or ability to obtain upon demand documents in the possession of another,'" but goes on to state that "in practice" some "other courts have sometimes interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents." 193 F.R.D. at 636, *citing Florentia Contracting Corp. v. Resolution Trust Corp.,* No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. Apr. 22, 1993)); *U.S. v. Skeddle,* 176 F.R.D. 258, 261 n. 5 (N.D. Ohio 1997); *Scott v. Arex,* 124 F.R.D. 39, 41 (D. Conn. 1989); Gary J. Mennitt, *Document Discovery: Possession, Custody or Control,* 214 N.Y.L.J. 214 (Nov. 21, 1995); *Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.,* 171 F.R.D. 135, 146 (S.D.N.Y. 1997); *In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996); *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y. 1992); *and M.L.C., Inc. v. North American Philips Corp.,* 109 F.R.D. 134, 136 (S.D.N.Y. 1986). Although *Prokosch*

makes this reference to a "practical ability" test, the court did not apply that test, but rather found that the producing party had the ability to obtain the requested documents from the third party "on demand as of right." 193 F.R.D. at 636.

A look at the cases to which *Prokosch* cites when mentioning the "practical ability" test demonstrate that this "test" rests on no legal analysis by any court. Specifically, *M.L.C.*, to which *Prokosch* cites, quotes *Cooper Industries, Inc. v. British Aeorospace,* 102 F.R.D. 918, 919-920 (S.D.N.Y. 1984), which states that "it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." *Cooper* appears to be the first court to relax the requirement that a party have the *legal* ability or right to obtain a document, not just "ability." However, *Cooper* involved a question of whether corporate affiliates controlled the documents in question—not just any third-party. Regardless, neither *Cooper* nor *M.L.C.* anywhere mention the term "practical ability."

Rather, that term first appears in *Golden Trade,* another case cited by *Prokosch*. 143 F.R.D. at 525. In *Golden Trade*, the court notes that a party has control over a document if it has "the legal right to obtain the documents requested on demand," but goes on to state that "in practice the courts have sometimes interpreted Rule 34 to require production if the party has *the practical ability* to obtain the documents from another, irrespective of his legal entitlement to the documents." *Id.* For this proposition, *Golden Trade* cites *M.LC.* which, as noted, *supra*, says no such thing. Likewise, none of the other cases *Golden Trade* cites make any mention of the term "practical ability." *See Scott v. Arex, Inc.* 124 F.R.D. at 41 (using the phrase "ability on demand"); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 19 U.S.P.Q.2d 1196, 1200-01 (D. Kan. 1991) (making no reference to any "ability" test of any kind); *Holland Am. Merchs. Corp. v. Rogers*, 23 F.R.D. 267, 268-69 (S.D.N.Y. 1959) (same). In other words, *Golden Trade* created this "practical ability"

test out of whole cloth, without reasoning or citation to any case which actually mentions or uses it.

The other cases *Prokosch* cites demonstrate how *Golden Trade* is the case to which all others that mention a "practical ability" trace back. *Skeddle* itself does not make mention of any "practical ability" test, although it cites *Golden Trade*, as well as *Scott* and *Folding Carton*, neither of which mention "practical ability." *Skeddle*, 176 F.R.D. at n. 5. *Florentia* only makes mention of an "ability to obtain documents on demand." 1993 WL 127187, at *3. Although *NASDAQ Market-Makers* at least mentions the term "practical ability," it cites *Golden Trade* and *Scott* for authority. 169 F.R.D. at 530. And, finally, *Bank of New York* too recites the "practical ability" test but, predictably, cites as authority, *NASDAQ Market-Makers, Golden Trade, Scott,* and *M.L.C.*

After *Engel's* injection of the "practical ability" test into the law in this Circuit concerning whether a party has possession, custody, or control of documents in the hands of a third party, at least two other courts in the Circuit have actually applied that test. Specifically, in *Pupo-Leyvas v. Bezy*, No. 08-cv-207, 2009 WL 1810337, at *1 (S.D. Ind. June 24, 2009), the court recites the test, applies it, and cites *Engel* for authority. Another court in *Acree v. Watson Pharm., Inc.,* No. 10 C 7812, 2012 WL 5878388, at *2 (N.D. Ill. Nov. 21, 2012) applies the test, although it cites a district court case from Kansas as support, to wit *Ice Corp. v. Hamilton Sundstrand Corp.,* 245 F.RD. 513, 517 (D. Kan. 2007). *Ice* relies upon *Super Film of America, Inc. v. UCB Films, Inc.,* 219 F.R.D. 649, 653 (D. Kan. 2004), which in turn relies on *Golden Trade*. A third case, *SRAM, LLC v. Hayes Bicycle Group, Inc.,* No. 12 C 3629, 2013 WL 6490252, at *4 (N.D. Ill. Dec. 10, 2013), makes only a passing reference to the "practical ability" test in a parenthetical to a citation to *Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994), which itself cites no cases, but only two secondary sources, to wit, 4A J. MOORE, MOORE'S FEDERAL PRACTICE

¶ 34.17, at 34–69 – 34–72 (1994) and 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2210, at 621–24 (1970).

Two other cases in this circuit, however, reject or limit the application of any "practical ability" test. Specifically, the court in *Boyd* flatly rejects any "practical ability" test, stating that "the Seventh Circuit is very clear that the issue of control turns on the *legal right* of the party to demand document production from a third party; 'the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means just the opposite.'" 2015 WL 5321262, at *3 (emphasis in original), *quoting Chaveriat v. Williams Pipe Line Co.*, 11 F.3d at 1427. The court concluded that notwithstanding the fact that the party and non-party in possession of the requested documents had a close business relationship over several years, "the issue of control turns on the *legal right to obtain documents*, not the practical ability to do so." *Id.* (emphasis in original).

Differently in *Slabaugh v. State Farm Fire & Cas. Co.*, No. 12-cv-01020, 2013 WL 4777206 (S.D. Ind. Sept. 5, 2013), the court considered whether a subsidiary corporation could be required to produce documents in the possession of its parent company in Korea. The plaintiff, who made the request to produce to the defendant, argued that the subsidiary had the "practical ability" to obtain the requested documents from its parent. The court agreed, noting that the "legal right" test and *Chaveriat* apply "to general third-party relations, not to cases that involve a legally recognized relationship like that of a parent company and its subsidiary." 2013 WL 4777206, at *5, *citing In re Subpoena Duces Tecum to Ingeteam, Inc.*, No. 11-MISC-36, 2011 WL 3608407 (E.D. Wis. Aug. 16, 2011) ("*Chaveriat* did not deal with control in the context of an interrelated corporate structure. Indeed, the relevant parties in *Chaveriat* had no legal relationship whatsoever"); *Engel*, 2007 WL 2903196.

This dissection of the cases addressing the proper standard to apply when considering whether a party has "possession, custody, or control" of a document in the hands of a third-party demonstrates the following: Where a party and non-party are not corporate affiliates, "[t]he test is whether the party has a legal right to control or obtain "the documents requested; a party's "practical ability" to obtain the documents is irrelevant absent a legal right to do so. *See Folding Carton*, 423 F.R.D. at 423; *see also Boyd*, 2015 WL 5321262, at *3.

**B**

Robinson argues that the Defendants have the "ability" to obtain the documents she seeks from the IDOC, but she fails to establish that the Defendants have any "legal right to control or obtain" the requested documents. *Id.*

Unquestionably, the Defendants have the practical ability to obtain the requested documents from the IDOC. In hundreds of cases in this district each year, discovery requests are made to individual IDOC employee defendants who, through their counsel provided by the Attorney General, obtain the documents from the IDOC. Presumably, the Attorney General and the IDOC accommodate these requests to avoid the flood of subpoenas which would issue if they refused to do so. Indeed, even as it relates to the documents in dispute here, Defendants' counsel told this Court at the August 10, 2020 hearing concerning this discovery dispute that, if ordered to do so by this Court, he would produce the documents in question which are admittedly not in the possession of these Defendants but in the possession of the IDOC. These facts clearly demonstrate a "practical ability" of the Defendants to obtain the requested documents from the IDOC.

However, none of these facts establish the Defendants have a "legal right to control or obtain" the documents in the possession of the IDOC. *Id.* As the Defendants argue, nothing in the statute cited by Robinson confers a right upon an IDOC employee to demand documents from the IDOC, his or her employer.

10

Although it is true that the Attorney General represents these Defendants and would also represent the IDOC were it to challenge a subpoena seeking these same documents, a party who has the same counsel as a non-party does not have the legal right to control or obtain documents from that third-party; nor does Robinson cite authority to suggest otherwise. Indeed, nowhere does Robinson argue that these Defendants have a legal right to control or obtain documents in the possession of the IDOC, but rather relies solely upon their practical ability to do so.

The case upon which *Robinson* primarily relies, *Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014), found in very similar circumstances that this practical ability of a party to obtain documents in the possession of a third-party is enough to compel the production of documents pursuant to Rule 34(a)(1), but *Gross* is not persuasive because it fails to rely on the party's *legal ability* to obtain the documents from a third-party. In *Gross*, a prisoner in the New York Department of Correctional and Community Services (DOCCS), brought a prisoner civil rights action against the defendant, a correctional officer employed by the DOCCS. The plaintiff, pursuant to Rule 34(a)(1), requested that the defendant produce documents related to prior and subsequent excessive force complaints by prison inmates against the defendant, including those contained in the DOCCS's files but not in the possession of the defendant himself. *Id.* at 140. The defendant sought a protective order, arguing that the documents were not in his possession, custody, or control. *Id.* at 141.

The court in *Gross* rejected this argument, holding that a party has control over a document "if the party is legally entitled to the documents or has the practical ability to acquire the documents from a third-party." *Id.* at 142 (citing *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009) (emphasis omitted)). The court then concluded the

defendant had the practical ability to obtain the documents from the DOCCS because: 1) the DOCCS previously produced some documents in its possession which were requested from the defendant; 2) there existed "close coordination" between the DOCCS and the defendant with respect to the defense against the plaintiff's claim; 3) the DOCCS's and the defendant's interests were aligned and closely interrelated; and 4) payments related to claims against the defendants would be paid from the DOCCS's departmental budget. *Gross*, 304 F.R.D. at 143. Nowhere, however, does the opinion in *Gross* find that the defendant had the legal right to obtain the requested documents from the DOCCS.

*Gross* is unpersuasive not only because it uses the wrong test, but also like the many cases discussed, *supra*, *Gross* does not explain why the "practical ability" test is the correct one, but instead provides a citation to a case for authority to use the test which, upon close examination, provides no real support for use of the test. *Wiwa*, the case upon which *Gross* relies, cites to three cases in support of its recitation of the "practical ability" test: *U.S. v. Stein*, 488 F. Supp. 2d 350, 360-61 (S.D.N.Y. 2007); *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000); and *NASDAQ Market Makers*, 169 F.R.D. at 530. None of these cases make any mention of a "practical ability" test. Thus, like many of the other cases examined by this Court, *supra*, *Gross*'s reliance upon a party's practical ability to obtain documents from a third-party, rather than its legal right to do so, is supported neither by reasoned analysis nor citation to caselaw which actually supports that reliance.

Accordingly, although the Defendants here have the practical ability to obtain the requested documents from the IDOC, the record fails to establish they have the legal right to obtain them from the IDOC. Consequently, the requested documents are not in the possession, custody, or control of the Defendants, and they cannot be compelled to produce the documents pursuant to Rule 34(a)(1).

**C**

Robinson and the Defendants also disagree about whether the Plaintiff's document requests seek relevant information, are proper in scope, and are proportional to the needs of the case pursuant to Rule 26(b). However, given that the Defendants are not the parties in possession, custody, or control of the documents in question, *see supra*, they are not in a position to resist production on the other bases they assert.

Rather, Robinson must first seek these documents from the entity in possession, custody, and control of them, presumably the IDOC, via a subpoena issued under Rule 45. The IDOC can then, if it so chooses, move to quash the subpoena under the standards set forth under Rule 45(d)(3). Although the Court may ultimately have the same arguments being made now before it again on such a motion to quash (indeed with the same attorneys, but this time with the Attorney General representing the IDOC rather than these Defendants), this Court cannot gloss over the legal requirements of the Federal Rules of Civil Procedure, even if it would make practical sense to do so.

**D**

The Court acknowledges that the consequences of this Order may have a significant impact on the manner in which litigation against IDOC employees must be conducted. As already noted, *supra*, it has heretofore been the common practice in prisoner litigation for a plaintiff to request documents from the defendants pursuant to Rule 34(a)(1) even if those documents are in the possession, custody, or control of the IDOC. It has also been common practice for the IDOC to provide the documents upon request to the defendant's counsel, who in turn produces it to the plaintiff.

The Attorney General has now apparently abandoned this practice, which it is entitled to do given the Court's order. Accordingly, henceforth, a plaintiff

must subpoena the IDOC for documents in its possession and not in the possession of its employees pursuant to Rule 45, rather than seek the documents from the defendant personally under Rule 34. Although strictly adhering to the rules and the appropriate standard for obtaining documents in the possession, custody, or control of the IDOC will likely result in a dramatic increase of subpoenas issued to the IDOC in prisoner litigation, it will also protect the integrity of the judicial process.

Specifically, as Robinson argues, the Attorney General under its prior practice "ha[d] it both ways." (D. 43 at ECF p. 12). Defense counsel could request documents from the IDOC when it suited the defendant and provide it to the plaintiff pursuant to a discovery request made under Rule 34(a)(1), but not make the request to IDOC when it didn't suit the defendant. Under such a regime, it is not clear what a representation that a document does not exist or is not in a defendant's possession actually means. Does the document not exist as far as the defendant personally knows, or as far as the IDOC knows? Is it not in the possession of the defendant, but in possession of the IDOC, or neither?

Moreover, under such a regime, if the Attorney General requests documents from the IDOC, obtains them, produces them to the plaintiff, and represents that those documents are all the responsive documents in the possession of the IDOC, what if that representation turns out to be wrong, as it sometimes happens? Assuming counsel for the Defendant reasonably relied upon the representation of the IDOC, the Federal Rules of Civil Procedure provide no clear remedy or sanction against a person or entity who makes a false representation to a party's counsel but which is itself neither a party nor under subpoena to produce documents. Conversely, a non-party who fails to comply with a subpoena is clearly subject to the court's contempt power pursuant to Rule 45(g). Accordingly, by requiring plaintiffs to subpoena documents from the IDOC when an individual

defendant does not possess those documents, the IDOC's responsibility for complying with that subpoena, and the consequences for failing to do so, are clear and defined by the Federal Rules of Civil Procedure. Such a process is contemplated by the Rules, whereas the informal procedure previously followed by the Attorney General and the IDOC is not.

### III

For the reasons stated, *supra*, the Plaintiff's Motion to Compel (D. 43) is denied.

*It is so ordered.*

Entered: September 29, 2020

<u>s/Jonathan E. Hawley</u>
U.S. Magistrate Judge